IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMON PROPERTY GROUP, INC., SIMON PROPERTY GROUP, L.P., NORTHGATE MALL PARTNERSHIP, and SHOPPING CENTER ASSOCIATES,<br><br>    Plaintiffs,<br><br>v.<br><br>MARK M. PALOMBARO, ABBY, INC., ROBERT E. CRAWFORD, R.E. CRAWFORD CONSTRUCTION, INC., MATTHEW W. PADGETT, JOEL D. SENCHUR, DREAM BUILDERS AND DESIGNERS, LLC, JEFFREY T. SMITH, R.E. CRAWFORD CONSTRUCTION, LLC, PARAGON BUILDERS, LLC, J.A.C. CONSTRUCTION CONSULTING, LLC, and JEFFREY A. USELTON,<br><br>    Defendants. | Civil Action No. 08-1634 |

MEMORANDUM and ORDER

Gary L. Lancaster,
Chief Judge.                                          January 28, 2010

This is an action alleging a scheme to defraud shopping center developers and owners related to several redevelopment projects. Plaintiffs Simon Property Group, Inc., Simon Property Group, L.P., Northgate Mall Partnership, and Shopping Center Associates (collectively "Simon") bring this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). Simon also asserts related state law claims for fraud, fraud in the inducement, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of contract. [Doc. No. 20].

(citations omitted).

III. <u>DISCUSSION</u>

It is on the standard set forth above that the court has reviewed Simon's motion to dismiss. Based on the pleadings of record and the briefs filed in support and opposition thereto, the court is persuaded that dismissal of Counts II and III of REC Inc.'s counterclaim and dismissal of REC LLC's counterclaim is appropriate at this time.

A. <u>"Sham Litigation" counterclaim</u>

Count II of REC Inc.'s counterclaim is for "sham litigation." Simon moves for dismissal of Count II, alleging that a claim for "sham litigation" does not exist outside of the antitrust context, and even if it did, REC Inc.'s claim lacks the requisite probable cause. Simon further contends that REC Inc. lacks antitrust standing to bring such a claim.[1]

REC Inc. responds that "sham litigation" exists in statutory contexts aside from antitrust, and that it has sufficiently alleged that Simon's lawsuit lacks probable cause.[2]

---

[1] Simon also contends that REC Inc.'s "sham litigation" claim cannot be interpreted as an abuse of process claim under Pennsylvania law. Because REC Inc. does not contend that it alleged such a counterclaim, we need not address Simon's argument on this point.

[2] In its opposition brief, REC Inc. failed to address Simon's contention that REC Inc. lacks antitrust standing. Because we dispose of this motion on other grounds, we need not address this argument.

The court finds that "sham litigation" is a cognizable cause of action in this instance. "Sham litigation" is an exception to Noerr-Pennington antitrust immunity. See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers v. Pennington, 381 U.S. 657 (1965). Noerr-Pennington immunity protects from antitrust liability those who petition the government.[3] Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); Mineworkers v. Pennington, 381 U.S. 657 (1965). Case law has extended Noerr-Pennington immunity to "the approach of citizens ... to administrative agencies ... and to courts." California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

As an exception to Noerr-Pennington immunity, "sham litigation" strips petitioners of Noerr-Pennington immunity when a petition is without merit and is anticompetitive in nature. Litigation constitutes a "sham" if it is: (1) objectively baseless and (2) subjectively motivated to interfere with business

---

[3] Although a violation of antitrust law underlies any "sham litigation" exception to antitrust immunity, a claimant need not allege a specific violation of the antitrust laws, especially in the context of the liberal pleading standards and a Rule 12(b)(6) motion. See TruePosition, Inc. v. Allen Telecom, No. 01-823, 2003 WL 151227, at *4 n.4 (D. Del. Jan. 21, 2003)

10

competition by using a governmental procedure as "an anticompetitive weapon." Professional Real Estate Investors v. Columbia Pictures Indus., 508 U.S. 49, 50 (1993) (citation omitted). If a party has probable cause to file a lawsuit, that lawsuit cannot be "sham litigation." Professional Real Estate Investors, 508 U.S. at 63.

Courts have applied the principles of Noerr-Pennington immunity in statutory contexts outside of antitrust.[4] See, e.g., State of Missouri v. National Organization of Women, 620 F.2d 1301, 1318-19 (8th Cir. 1980) (applying Noerr-Pennington principles to state law tort claims); Video Int'l Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir. 1988) (holding that Noerr-Pennington doctrine applies to Civil Rights Act liability). At least one court has extended Noerr-Pennington immunity RICO lawsuits. Sosa v. DirecTV, Inc., 437 F.3d 923, 942 (9th Cir. 2006) (affirming district court's ruling on the basis of Noerr-Pennington doctrine).

Courts have also specifically analyzed the applicability of the "sham litigation" exception to Noerr-Pennington immunity

---

[4] Neither party relied on Third Circuit case law regarding the application (or lack thereof) of Noerr-Pennington immunity to protect petitioning of the government from claims brought under non-antitrust federal and state laws. The court, however, was able to find at least one such case. See Cheminor Drugs, Ltd. v. Ethyl Corp. et al., 168 F.3d 119, 128-29 (3d Cir. 1999) (applying Noerr-Pennington immunity to New Jersey state law claims).

outside of the antitrust context. BE&K Constr. Co. v. NLRB, 536 U.S. 516, 531 (2002)(refusing to strip antitrust immunity from an employer who filed a losing and retaliatory lawsuit where the suit was not objectively baseless); Carroll Touch, Inc. v. Electro Mechanical Sys., 15 F.3d 1573, 1583 (D.C. Cir. 1993) (affirming district court's refusal to strip Noerr-Pennington immunity in patent infringement case where no evidence that suit was objectively baseless).

Furthermore, "courts have recognized a "sham litigation" counterclaim as a cognizable cause of action for a violation of the Sherman Antitrust Act." WAKA LLC v. DC Kickball, 517 F. Supp. 2d 245, 251 (D.D.C. 2007) (citing TruePosition, Inc. v. Allen Telecom, No. 01-823, 2003 WL 151227, at *4-5 (D. Del. Jan. 21, 2003)).

Thus, it follows that if Noerr-Pennington immunity principles apply in the contexts identified by the case law set forth above, then the "sham litigation" exception to Noerr-Pennington immunity may apply in such contexts as well. Thus, a claim for "sham litigation" is a viable counterclaim in this RICO lawsuit.

Although we recognize "sham litigation" as a viable counterclaim in this instance, as it is plead, REC Inc.'s "sham litigation" counterclaim fails to provide enough factual allegations to meet the rigors of Twombly and its progeny. REC Inc. sets forth only blanket and conclusory statements regarding both prongs of the

12

"sham litigation" exception. Specifically, REC Inc.'s "sham litigation" counterclaim merely states that: (1) Simon contacted the U.S. Attorney's Office without cause and (2) filed a baseless lawsuit with the intent of inhibiting competition.[5] As the Twombly line of cases has made clear, a claim for relief under Rule 12(b)(6) "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Iqbal, 129 S.Ct. at 1950; Twombly, 550 U.S. at 555. A counterclaim plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 570). For these reasons, the court grants, without prejudice to REC Inc.'s right to amend, Simon's motion to dismiss REC Inc.'s cause of action for "sham litigation."

B. <u>Tortious interference counterclaims</u>

Both REC Inc. and REC LLC assert claims for tortious interference with existing and prospective contractual relations. While both REC Inc. and REC LLC bring these claims as one cause of

---

[5]

> Simon's contention, however, that REC Inc.'s "sham litigation" claim fails because Simon had probable cause in filing this lawsuit is of no avail. At this stage in the litigation, the court's probable cause analysis is based exclusively on the allegations set forth in REC Inc.'s counterclaim. Here, REC Inc. alleges in a conclusory fashion that "Simon had no basis for bringing the present lawsuit or contacting the U.S. Attorney." [Doc. No. 60]. While REC Inc. need not prove that Simon lacked probable cause at this stage, it must allege circumstances that would give rise to a lack of probable cause.

13

action, the court notes that tortious interference with existing and prospective contractual relations are two separate causes of action.

Under Pennsylvania law, the elements of a claim for tortious interference with existing contractual relations are: (1) the existence of a contractual relation between the claimant and a third party; (2) purposeful action by the opposing party specifically intended to harm the existing relation; (3) the absence of privilege to do so; and (4) resulting damages. See Reading Radio, Inc v. Fink, 833 A.2d 199, 211 (Pa. Super. Ct. 2003).

Tortious interference with prospective contractual relations requires a showing of the existence of prospective contracts. Avord-Polk, Inc. v. F. Schmucher & Co., 37 F.3d 996, 1014 (3d Cir. 1996). The Court of Appeals for the Third Circuit has held that the Pennsylvania Supreme Court mandates that there be an objectively reasonable probability that the contract will come into existence. Schulman v. J. P. Morgan Inv. Management, Inc., 35 F.3d 799, 808 (3d Cir. 1994).

REC Inc. and REC LLC assert that Simon's initiation and publication of this lawsuit, contact with the U.S. Attorney's Office, and refusal to permit its tenants to contract with REC Inc. to perform work within any of Simon's malls interfered with REC Inc.'s contracts with existing and prospective clients.

Simon contends that REC Inc.'s and REC LLC's counterclaims for tortious interference with existing and prospective contractual

14

relations should be dismissed because REC Inc. and REC LLC fail to show how Simon's actions are not protected by the judicial and/or financial interest privilege. We agree.

In their tortious interference counterclaims, both REC Inc. and REC LLC allege that Simon's interference with their existing and prospective contracts was not privileged. For purposes of deciding this motion, we need not accept this blanket, conclusory statement. Legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. Iqbal, 129 S.Ct. at 1940 (citing Twombly, 550 U.S. at 555). Accordingly, REC Inc. and REC LLC have failed to set forth a sufficient factual basis for their claims for tortious interference with existing and prospective contractual relations. Therefore, Simon's motion to dismiss these claims is granted, without prejudice.

IV. CONCLUSION

In sum, the court finds that REC Inc. has failed to state a claim for "sham litigation" and both REC Inc. and REC LLC have failed claims for tortious interference with existing and prospective contractual relations. Accordingly, Simon's motion to dismiss these claims is granted without prejudice to REC Inc.'s and REC LLC's right to amend their counterclaims.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMON PROPERTY GROUP, INC., <br> SIMON PROPERTY GROUP, L.P., <br> NORTHGATE MALL PARTNERSHIP, and <br> SHOPPING CENTER ASSOCIATES, <br>     Plaintiffs, <br> <br> v. <br> <br> MARK M. PALOMBARO, ABBY, INC., <br> ROBERT E. CRAWFORD, R.E. CRAWFORD <br> CONSTRUCTION, INC., MATTHEW W. <br> PADGETT, JOEL D. SENCHUR, DREAM <br> BUILDERS AND DESIGNERS, LLC, <br> JEFFREY T. SMITH, R.E. CRAWFORD <br> CONSTRUCTION, LLC, PARAGON <br> BUILDERS, LLC, J.A.C. CONSTRUCTION <br> CONSULTING, LLC, and JEFFREY A. <br> USELTON, <br> <br>     Defendants. | Civil Action No. 08-1634 |

ORDER

AND NOW, this 28 day of January, 2010, upon consideration of Simon's motion to dismiss [Doc. No. 65] Counts II and III of defendant REC Inc.'s counterclaim and REC LLC's counterclaim, IT IS HEREBY ORDERED that the motion is GRANTED, WITHOUT PREJUDICE.

BY THE COURT:

_____ Chief J.

cc:   All counsel of record